We'll hear the next case, Sistem Muhendislik versus Kyrgyz Republic. Good morning, Your Honors. Grant McCrae for Kyrgyz Republic. If it pleases the Court, what this comes down to, despite the large number of interpretations of a contract, the Bilateral Investment Treaty is a contract between two countries, in this case, Kyrgyzstan and Turkey. And the wording that is a matter of contention, the meaning of which is a matter of... Before you launch into that, neither side addressed two recent decisions of our Court, the Mobile-Cerro Negro versus Venezuela and CBF-Industria, which were both decided in 2017, which suggests that the Foreign Sovereign Immunities Act is the sole basis for jurisdiction over foreign sovereignties, including in trying to enforce ICSID arbitration awards. And I'm wondering whether the District Court had jurisdiction even. That's a question that, as you say, Your Honor, was not addressed by either side. Well, it's a preliminary question, so I expect we ought to get briefing on it. That's certainly... I obviously would have no problem with that. Well, the issue is when you are seeking to enforce an award against a foreign sovereign, you have to follow the procedures in the Foreign Sovereign Immunities Act, including venue. Venue being, unless there are strong connections to New York, let's say, venue would be in Washington, D.C. Yes, Your Honor. We did make a venue objection in the court below. Well, all right. We'll ask for some supplemental submissions, I think. But why don't you go ahead. We'd be happy to do that, Your Honor. Now, on what you said, if it is contractual, or if it is something like interpretation of contract, or if it is the prudential which comes down to something very close, haven't you at least forfeited, if not waived, by not making the argument you are making now before the arbitrators? Under our cases, don't you have to say to the arbitrators, this could not be done under the additional, but could be done under the other, rather than just making it later? Down there, you made exactly the opposite argument. Your Honor, I don't think that the requirement in the case law is that you go to that level of specificity. And particularly in a case like this, where the jurisdiction of . . . Well, but you argued there that it couldn't be brought under center. Correct. Well, what you're saying now is that it had to be brought under center because of this particular contractual arrangement that you say takes over over what was the treaty. Now, if you don't make that to the arbitrators, where we say most such arguments are at least forfeited, let's not necessarily say waived, if they're not made, why isn't that then become to us at least a question of plain error? And if it's plain error, the nature of this uncertain, you yourself said uncertain, keeps it from being plain error. Your Honor, I'm not sure what you're referring to when you say that the objection was made. I assume you're referring to at the arbitration itself that the objection was made to that the center did not have jurisdiction. If you look at respondents' arguments, they are claiming that both types of arbitration are center arbitrations. Which would make an objection to center's jurisdiction over the parties encompassed both of them. Now, we're of course arguing that there is a distinction because there is a treaty that explicitly lists those facilities and organizations under which arbitrations are agreed to, which is where we get to the question of interpretation. We find it, we submit that it's very puzzling that the court below, having apparently quite carefully reviewed the different bilateral investment treaties submitted by appellant, came to the conclusion that because they were all different, therefore there wasn't any conclusion to be drawn that was relevant to the meaning of this one. Well, in the first instance, they're not all different, and they're not all different in the explicit language that's of importance here, which is that in every case where the Republic of Kyrgyzstan wished to accede to alternate facility arbitration, it did so in explicit terms. And where it didn't, it did not. And there's a very large difference between the two. The respondents try very hard to conflate the two, but they are, in fact, utterly different. In fact, the alternate facility rules explicitly are in place to apply to arbitrations that do not come under the Convention. There couldn't be a greater difference than that, and it's obvious that the Republic of Kyrgyzstan is very well aware of the distinction because, depending on who the other party was, that was either included or not included expressly, hence our invocation of the expression onus principle, which we think is absolutely central to this interpretation. I see my time is up, so... You have some time for rebuttal. We'll hear from the other side. Your Honors, may it please the Court. I'm happy to address the preliminary issues you mentioned first. Yes. This Court has jurisdiction over this case under Section 1605A6 of the Foreign Sovereign Immunities Act. That's a provision that expressly gives courts jurisdiction notwithstanding sovereign immunity in cases to enforce arbitral awards under the New York Convention. I understand that, but to get enforcement of an arbitration award, you have to go through the FSIA, and there are certain procedures that apply. I mean, were those procedures followed in this case? Yes, they were, Your Honor. The difference between this case and Mobile Cerro Negro, and the reason why the issues there don't arise here, is that Mobile Cerro Negro was an ICSID Convention case, and in Convention cases, there's a distinct ICSID regime for enforcing awards in U.S. courts, and there was an issue in that case about whether that regime itself abrogated sovereign immunity. This case is different because it involves additional facility, and additional facility awards are not enforced under the ICSID regime. They're enforced under the New York Convention, the same as any other arbitral award. So there's never been any dispute that we're relying on the New York Convention and Section 1605A6 as a basis for overcoming immunity in this case. The republics never once argued that it has any plausible sovereign immunity defense in light of 1605A6, and because of the distinction in the enforcement regimes between convention awards and additional facility awards, the issues that this court confronted in the Mobile Cerro Negro case just don't arise here. With respect to venue, they did make a venue objection below. That was specifically ruled upon by the district court. First, the district court rejected the venue argument on two alternative grounds. One, because it hadn't been timely pled below. They did not make a venue objection within the time required for making such objections under the applicable rules. And second, the district court rejected it based on the court's statutory interpretation of the relevant venue provision. They did not appeal that ruling to this court. Venue is not jurisdictional, so having made the argument below and declined to appeal it, that's been waived, and it would be inappropriate to allow them to now resurrect that argument when they specifically declined to raise it on appeal. It is not a jurisdictional issue. Turning then to the merits of the case, and I think there's a very straightforward way to resolve this case, which is the one that Judge Calabresi raised, and that's that this court has been very clear that to preserve an objection during an arbitration, it's not enough just to make an omnibus objection to jurisdiction or object on one ground and then raise a completely new ground later on in the enforcement proceedings. You must actually state the basis for the objection. That was not done here. The Republic has never claimed that it did it here. During the arbitration, it objected to the jurisdiction of the tribunal on completely different grounds that have nothing to do with the argument it raises now. And so under this court's clear precedence, that's not sufficient. The argument's waived, and that alone is a sufficient basis to reject the Republic's arguments here just as the district court... There are two grounds for that position. One is the contractual one, and the other one is a prudential one, that we don't want to talk about these things if they weren't raised before. The contractual one, if it works, is a waiver, directly, a full waiver, not a forfeiture. The problem with the contractual one is that they said below we are not bound to arbitrate, which means that they negated the existence of a contract, which makes it a little harder to make a contractual argument. The prudential one, which is in our cases too, does remain, and that brings it to the question of forfeiture, which is not quite as strong as the waiver that you're saying, but it is quite strong, and says that we will not take it. I agree, and I take your point. But on the facts of this case, and in arbitration cases generally, this court has taken quite a strong view even of that prudential waiver. And the reason for that is this was an arbitration that began 13 years ago. They are now seeking to start that process all over again, 13 years later, on the basis of an argument they never made. And their failure to make that argument earlier has been seriously prejudicial to us, because if they had raised it at the time, there are any number of things we could have done to have responded in a way that obviated the issue. This investment treaty permits arbitration in three different forms. So if they didn't like exit additional facility, we could have just, you know, gone down the street to some other forum, like the ICC in Paris, or an ad hoc unsettled tribunal, and arbitrated our claims there. We had multiple options, and we didn't have to choose this one. If they'd raided this argument before the tribunal, the tribunal could have relied on its jurisdiction under one of the other applicable instruments. The law on investment explicitly authorizes additional facility jurisdiction. And so the tribunal could have... And, in fact, the tribunal found that it had jurisdiction under that statute. So had they raised this argument, the tribunal could have grounded its decision based on the expropriation provisions of that treaty instead of the BIT. Or the tribunal could have... Had it known about these arguments, the tribunal also could have accepted our argument under the most favored nation clause of the BIT. So there were multiple other grounds for jurisdiction we presented in the arbitration. And had this argument been timely raised, the tribunal could have assessed it, could have either rejected it or accepted it on the merits, or could have just obviated it by grounding its jurisdiction somewhere else, because we had multiple different grounds for arguing that jurisdiction in the tribunal. And by not giving the tribunal that opportunity, the republics now created the situation where 13 years later we can only speculate what the tribunal would have done. We don't have the benefit of the tribunal's reasoning on the most favored nation clause. Although, again, the tribunal did find that it had jurisdiction under the law on investment too. So whether it's a prudential issue or a contractual issue, this is about as strong a case as I can possibly imagine for enforcing a waiver principle. Courts have repeatedly found that failure to challenge jurisdiction, failure to make your specific jurisdictional objection during the arbitration, waives that argument for later reasons. And there are good and sound reasons for that waiver rule, and they apply with full force to these proceedings. And that waiver issue is sufficient standing alone to reject the republic's position in this case. I'll speak briefly to the merits of the arguments that were raised here. Again, issues the court doesn't need to reach based on the waiver issues. But we think on the merits, the district court wrote a thorough and persuasive opinion on that issue too, because it really does come down to the plain language of this particular agreement. And I couldn't agree more with Mr. McRae that convention arbitration and additional facility arbitration are different animals. The important point is that those are just two types of exit arbitration. Exit administers convention arbitration, and exit administers additional facility arbitration. And so if you have a treaty that authorizes exit arbitration without narrowing that to a particular type of exit arbitration, or a particular set of exit rules, then the consequence of that is you've agreed to exit arbitration broadly. And you say that the bilateral investment treaty does just that. We do say that, and that's just a question of its plain terms. The treaty, you know, unlike the treaties that Mr. McRae cites, the ones where the republic actually limits itself to a particular type of exit arbitration, this treaty does not do that. And I think this contrast is pretty illuminating because they pointed to two treaties below that that narrow the type of proceedings. One is the Indonesia treaty, and that one authorizes arbitration before exit, and then it has the key phrase under the convention on the settlement of investment disputes. So that's an example of language that specifically limits the rules that apply and says the arbitration will be done under the convention. The other example is the Latvia treaty, and that one authorizes arbitration before exit having regard to the applicable provisions of the convention. So there too, it is authorizing arbitration, but only according to particular rules. If that's what the draftspeople wanted to do with respect to this treaty, that's the kind of language they would have used. But this treaty just doesn't have that. It refers to arbitration before exit, which is the entity set up by the convention, but that's certainly true regardless of which type of proceeding you're in, in the event that both parties become signatory to the convention. And again, that clearly happened here too. So the treaty language here is different from those other two treaties in precisely where it counts because in those treaties, it modifies the rules that apply to the proceeding, and there's no similar language in this treaty. And as a result, this treaty authorizes exit arbitration broadly without limitation as to whether you're going to apply convention proceedings or additional facility proceedings. Unless Your Honor has any further questions, I'll rest on my briefs on the remaining issues. Thank you. We'll hear the rebuttal. Thank you, Your Honor. I just want to make a couple of quick points. Particularly the very last thing that Mr. Crye said, the parenthetical language in the Bilateral Investment Treaty in question here is in the event that both parties become signatories to the convention. Now, SISTEM has argued that the provision as a whole covers both regular exit convention proceedings and alternate facility proceedings. Well, that language implicitly excludes alternate facility arbitration because our alternate facility arbitration explicitly refers to the parties not both being party to the convention. So I believe that the argument is upside down as articulated by counsel for SISTEM. Also, Mr. Crye said, and he says in his brief as well, I believe, that the tribunal determined that the law on investment applied as a separate ground for jurisdiction. I don't have the decision in front of me, but I think it should be very clear if and when the court reads it that they expressly declined to rule on the LOI. Finally, Mr. Crye began by saying that SISTEM did not have to choose this type of arbitration. They could have gone to other forums that were explicitly permitted under the BIT here. That's exactly our point. Well, but doesn't that go to forfeiture? I mean, he argues if there were these other things and you conceded, then had you raised the argument, wouldn't they have been able to do it rather than coming up to us 13 years later and now saying, oh, too bad? Well, you know, the 13 years is a bit of a red herring. I don't know why it took that long to get before this court. I only began working on this case two years ago. But at any rate . . . I'm sorry, Your Honor. No, the idea is to raise it at the time, so however many years, 13 years ain't that long for me. Your Honor, the point is not the amount of time that has gone by. The point is that they chose the one form of arbitration that was not agreed to. And the BIT. And that's a fundamental basis for lack of jurisdiction. And jurisdiction was pleaded, even if they didn't use the words alternate dispute resolution rules. The fact is that they did argue jurisdiction, and jurisdiction on the face of it was absent in this case. And therefore, the ruling of the panel was a nullity. Given that, I'll rest on my briefs. On the preliminary issue I raised, I don't know if you're satisfied with Mr. Krey's suggestion, but since you haven't read the cases, take a look at Mobile-Cerro Negro, which is 863 F. 3rd 96, and CBF Industria, which is 850 F. 3rd 58, both decided in 2017. It goes to jurisdiction, so even though he didn't raise it, I don't know that it's waived. But if you think they are relevant, if you're not satisfied with the explanation, submit something to us. No more than ten pages one week from today, and then Mr. Krey can respond within one week thereafter. I appreciate that, Your Honor. Double-spaced. The usual rules apply, I assume. Double-spaced. And if you decide that he is correct, just send a short letter advising that you're not going to press those issues. Certainly. Thank you very much. Thank you very much.